IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES, | : | |
| | : | CRIMINAL ACTION |
| v. | : | NO. 09-474-1 |
| | : | |
| WILLIAM CARABALLO, | : | |
| Petitioner. | : | |

**Jones, II      J.**                                                                 January 30, 2015

### MEMORANDUM

On June 12, 2012, William Caraballo ("Petitioner") filed a *pro se* Motion under 28 U.S.C. § 2255. (Dkt No. 416 [hereinafter Pet. Mot.]) Petitioner raises three claims in his habeas Petition: (1) Petitioner's trial counsel was ineffective for failing to challenge the recommendation and imposition of the two-level dangerous weapon enhancement pursuant to U.S.S.G. § 2D1.1(b)(1); (2) the District Court committed plain error in imposing the two-level dangerous weapon enhancement thereby violating the Petitioner's Fifth Amendment right to due process; (3) the Supreme Court's ruling in *Bond v. United States* recognized a new right which will be made retroactive and allow challenges to the Federal Court's jurisdiction in Petitioner's crime.

On December 21, 2012, the Government submitted a Motion to Dismiss. (Gov't Mot. to Dismiss, Dkt No. 437 [hereinafter MTD].) The Government argues that Petitioner waived his right to appeal or collaterally challenge his sentence in his guilty plea agreement. (MTD at 1.)

The Court holds that Petitioner waived his right to allege all three of his claims. The Government's Motion to Dismiss is GRANTED and Petitioner's Petition is DISMISSED.

### I.    Background

On June 14, 2010, Petitioner pled guilty to Counts 1 through 8 of the Superseding Indictment, (Dkt No. 93), which charged him with conspiracy to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. § 841 (Count I), distribution, aiding and abetting in the distribution of cocaine in violation of 21 U.S.C. § 841 (Counts II - IV), intent to distribute cocaine in violation of 21 U.S.C. § 842 (Counts V-VI), possession with intent to distribute five hundred (500) grams or more of cocaine in violation of 21 U.S.C. § 841 (Counts VII-VIII). (Dkt

No. 211.) Petitioner pled pursuant to a Guilty Plea Agreement. (MTD, Ex. A [hereinafter Plea Agreement].) This agreement explicitly waived Petitioner's right to appeal or collaterally attack the conviction, sentence, or other matter relating to the prosecution:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all right to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived….
>
> If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:
> (1) The defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 6 above;
> (2) The sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines;
> (3) The sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 543 U.S. 220 (2005) imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.
>
> If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph. (Plea Agreement ¶ 9.)

On June 14, 2010, Petitioner appeared before the Court for Guilty Plea Hearing. (Dkt No. 211.) On January 3, 2011, the Court sentenced Petitioner. (Dkt No. 265.) The Court imposed a judgment of two hundred and ten (210) months of imprisonment to run concurrently. (Dkt No. 269.)

On January 5, 2011, Petitioner appealed to the United States Court of Appeals for the Third Circuit. (Dkt No. 270.) On March 24, 2011, the Third Circuit granted the Government's motion to enforce appellate waiver and granted summary judgment. (Dkt No. 340.)

On June 12, 2012, Petitioner filed a Motion under 28 U.S.C. § 2255 to vacate Petitioner's sentence.

## II.     Legal Standard

The Government has moved to dismiss Petitioner's Motion on the grounds that he waived his right to collaterally attack his sentence in his Plea Agreement. (MTD at 1.) The Third Circuit has held that a Defendant's waiver of appellate rights or rights to collaterally attack a conviction or sentence shall be enforced so long as it was entered knowingly and voluntarily and

enforcement of the waiver would not create a miscarriage of justice. *See United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001). The Court will analyze whether (1) Petitioner entered his plea agreement knowingly and voluntarily, (2) whether one of the specific exceptions set forth in the Plea Agreement prevents the enforcement of the waiver, and (3) whether the enforcement of the waiver would create a miscarriage of justice. *United States v. Mabry*, 536 F.3d 231, 244 (3d Cir. 2008).

### III. Discussion

**A. Petitioner knowingly and voluntarily waived his appellate rights.**

Criminal defendants may waive the right to appeal provided they do so "voluntarily and with knowledge of the nature and consequences of the waiver." *Mabry*, 536 F.3d at 236 (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983)); *see also Khattak,* 273 F.3d at 561 ("If done knowingly and voluntarily, a statutorily created right to appeal is generally held to be waiveable."). The Court must analyze whether "there is record evidence that [Petitioner] knowingly and voluntarily signed the waiver." *United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007). The Court may look to the language of the waiver and the guilty plea colloquy. *Mabry*, 536 F.3d at 238 (citing *Gwinnett*, 483 F.3d at 203-04).

Pursuant to the Federal Rules of Criminal Procedure 11, this Court conducted a plea colloquy. (MTD, Ex. B [hereinafter Plea Trans.]). After placing Petitioner under oath, the Court engaged in the following colloquy:

> THE COURT: Now, Mr. Caraballo, I'm going to ask you a number of questions. I'm asking you these questions to make certain that what you're doing here is something that is fully understood by you and fully appreciated by you . . . . It's very important that you give me honest and truthful answers to the questions that I've put to you lest you be subject to being charged with false swearing or perjury. Do you fully understand that?
>
> MR. CARABALLO: Yes, sir. (Plea Tr. 5:5-15.)

Petitioner testified that he was fully aware and competent, (Plea Trans. 7:4-15), that he had discussed the charges with his attorney and was satisfied with his attorney, (Plea Trans. 7:21-8:15), and that no one promised, threatened, or forced him to plead guilty. (Plea Trans. 12:9-20.)

Regarding sentencing, the Court engaged in the following colloquy:

> [THE COURT]: [D]o you understand that on the basis of a plea of guilty, you could receive a sentence up to the maximum permitted by law?
>
> [MR. CARABALLO]: Yes, I do.
>
> [THE COURT]: Do you understand that no one, and I emphasize no one, can guarantee you what sentence you will receive from this Court?
>
> [MR. CARABALLO]: Yes, I do. . . .
>
> [THE COURT]: I may depart from the [Sentencing] Guidelines under certain circumstances, do you understand that?
>
> [MR. CARABALLO]: Yes, I do. . . .
>
> [THE COURT]: Do you understand that your counsel and counsel for the Government can agree on the facts, they can make recommendations, they can file motions and requests . . . but I don't have to do what they ask me to do, do you understand that?
>
> [MR. CARABALLO]: Yes, I do. (Plea Trans. 13:20-14:1, 17:21-23, 19:11-16.)

The Court also apprised Petitioner of his waiver of appellate rights:

> [THE COURT]: Now sir, do you understand that if you were found guilty, you could appeal such a finding of guilt to a higher Court which could either set aside or modify the finding of guilty or even give you a new trial?
>
> [MR. CARABALLO]: Yes, I understand.
>
> [THE COURT]: Now, you understand that by pleading guilty, you're giving up your right to all of those things?
>
> [MR. CARABALLO]: Yes, I do.
>
> [THE COURT]: Again, has anyone threatened you or promised you anything other than what's been stated in the plea agreement in order for you to give up those valuable rights?
>
> [MR. CARABALLO]: No.
>
> [THE COURT]: There was mention earlier by the Assistant United States Attorney of the rights to appeal that you're giving up by reason of your plea agreement. I'm going to go over those with you at this time. Now, this plea agreement severely limits your rights to appeal. It also prevents you from later using proceedings like habeas corpus petitions to challenge your conviction, sentence or any other matter. You can therefore only appeal if

> the Government appeals the sentence itself, or if I impose a sentence which exceeds the statutory maximum for any count, or I erroneously depart upward under the Sentencing Guidelines, or if in exercising my discretion pursuant to the case of <u>The United States vs. Booker</u> I impose an unreasonable sentence above the final Sentencing Guidelines which range is determined by this Court. Now, do you understand those rights as I've just explained them to you?
>
> [MR. CARABALLO]: Yes, I do.
>
> [THE COURT]: Do you have any questions whatsoever of me, the Assistant United States Attorney or your own counsel at this time?
>
> [MR. CARABALLO]: No, I do not. (Plea Trans. 23:1-24:6.)

The Court holds that Petitioner knowingly and voluntarily waived his right to appeal.

### B. The exceptions in the waiver do not apply.

The Plea Agreement provides exceptions to the appellate waiver in limited circumstances. In this case, the Government did not appeal the sentence. As such, only three exceptions in the Plea Agreement apply. Under these three exceptions, Petitioner can challenge his sentence wherein (1) Defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 6 above; (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; or (3) the sentencing judge, exercising the Court's discretion pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005) imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court. (Plea Agreement ¶ 9.)

### a. Defendant's sentence on each count of conviction did not exceed the statutory maximum as outlined in his Plea Agreement nor did it exceed the final United States Sentencing Guideline range determined by the Court.

The Plea Agreement's first exception allows for a challenge if a sentence for any of the counts of conviction exceeded the statutory maximum set forth in paragraph 6 of the Plea Agreement. (Plea Agreement ¶ 9.) Paragraph 6 of the Plea Agreement outlined:

> The defendant understands, agrees and has had explained to him by counsel that the Court may impose the following statutory maximum and mandatory minimum sentence: life imprisonment, with a statutory mandatory minimum of 10 years imprisonment, a fine of $13 million, at least 5 years up to a lifetime of supervised release, and a special assessment of $800. (Plea Agreement ¶ 6.)

Plaintiff was sentenced to two hundred and ten (210) months imprisonment. This is not greater than the maximum – "life imprisonment" – referenced in paragraph 6 of the Plea Agreement.

Further, the Court's judgment against Petitioner as to each count was not greater than the maximum under the United States Sentencing Guidelines as to each count. Under the United States Sentencing Guidelines, the maximum sentences are life imprisonment, including a mandatory minimum of ten (10) years imprisonment, a $4 million fine, at least five (5) years up to a lifetime of supervised release, and a $100 special assessment (Count I), twenty (20) years imprisonment, a fine of $1 million, at least three (3) years up to a lifetime of supervised release, and a special assessment of $100 (Counts II-IV),  twenty (20) years imprisonment, a fine of $1 million, at least three (3) years up to a lifetime of supervised release, and a special assessment of $100 (Counts V and VIII), and forty (40) years imprisonment, with a statutory mandatory minimum of five (5) years imprisonment, a fine of $2 million, at least four (4) years up to a lifetime of supervised release, and a special assessment of $100 (Counts VI-VII). The Court's sentence was less than these U.S.S.G. guideline maximums. As such, Petitioner cannot seek exception to his appellate waiver under this exception.

> **b. The Court did not erroneously depart upward pursuant to the Sentencing Guidelines.**

This Court did not erroneously depart upward. The Court did not grant or impose an upward departure.

> **c. The Court did not impose a sentence above the final range calculated by the Court.**

The Court did not impose a sentence above the final range calculated by the Court. Petitioner's total adjusted offense level was thirty-six (36). A total offense level of thirty-six (36) and a criminal history category of one (I) result in an advisory Guidelines range of imprisonment for one hundred eighty eight (188) to two hundred and thirty five (235) months. The Court sentenced Petitioner to two hundred and ten (210) months, clearly within the range of the final calculations.

In conclusion, none of the three exceptions to appellate waiver in Petitioner's Plea Agreement apply.

### C. Enforcement of the waiver would not create a miscarriage of justice as to two of Petitioner's claims, but may as to a third claim.

An appellate waiver entered into knowingly and voluntarily may still be unenforceable if its enforcement would create a miscarriage of justice. *United States v. Jackson*, 523 F.3d 234, 242-43 (3d Cir. 2008); *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008). The waiver must be enforced unless the Court identifies "the unusual circumstance" of "an error amounting to a miscarriage of justice" in his sentence. *Khattak*, 273 F.3d at 562. To determine whether enforcement would create a miscarriage of justice, the Court considers:

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result. *Id.* at 563 (quoting *U.S. v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)).

The "miscarriage of justice" exception to enforcement of a voluntarily and knowingly entered waiver should be applied "sparingly and without undue generosity." *United States v. Wilson*, 49 U.S. F.3d 455, 458 (quoting *Teeter*, 257 F.3d at 26.)). The Court considers each of Petitioner's three claims for relief as to whether or not enforcement of the waiver would create a miscarriage of justice.

### a. Enforcement of the waiver as to Ground One would not be a miscarriage of justice.

Petitioner claims that his counsel was ineffective due to his counsel's failure to object to the two-level dangerous weapon enhancement at his sentencing hearing. The Court notes that while Petitioner's counsel did not object at the hearing, his already voiced objection was noted by the Court at the sentencing hearing. When determining whether to apply the enhancement, the Court specifically stated: "The Court understands that the defendant objects to the imposition of a firearms enhancement." (Sen. Trans. 44:2-3.)

An appellate waiver does not "become unenforceable simply because a defendant claims ineffective assistance of counsel." *United States v. Nance*, 500 Fed. App'x 171, 179 (3d Cir.

2012) (quoting *United States v. Monzon,* 359 F.3d 110, 118 (2d Cir. 2004) (internal citations omitted)). In only rare circumstances has the Third Circuit found ineffective counsel to create a miscarriage of justice. *See, e.g.*, *United States v. Mabry*, 536 F.3d 231, 243 (3d Cir. 2008); *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007). However, these cases are easily distinguishable from this case.

The facts alleged here – construing them as true – do not rise to a rare error. This claim is barred by the waiver in Petitioner's plea agreement. The waiver will be enforced as this type of collateral challenge is insufficient to merit application of the narrow miscarriage of justice exception.

### b. Enforcement of the waiver as to Ground Two would not be a miscarriage of justice.

Petitioner's second claim for relief for a writ of habeas corpus is that the District Court "committed Plain Error in imposing the two-level dangerous weapon enhancement." (Pet. Mot. at 5.) The two-level dangerous weapon enhancement "reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. 3. "This enhancement applies if the Government shows, by a preponderance of the evidence, that 'the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'" *U.S. v. Thornton*, 306 F.3d 1355, 1357 (citing U.S.S.G. § 2D1.1 cmt. n. 3) (citing *U.S. v. Price*, 13 F.3d 711, 733 (3d Cir. 1994)). Factual findings related to the Guidelines must be supported by a preponderance of the evidence. *U.S. v. Gomez*, 540 Fed.Appx. 143, 145 (3d Cir. 2013). At the time of Petitioner's sentencing, the Third Circuit had not clarified the exact procedural approach that district courts should take in deciding this type of enhancement. The Third Circuit only recently, years after Petitioner's sentencing, expounded on the shifting burdens such a test requires.[1]

---

[1] In August 2014, in *U.S. v. Napolitan*, the Third Circuit held that:

> The government bears the burden of proving by a preponderance of the evidence that a sentencing enhancement applies. With respect to U.S.S.G. § 2D1.1(b)(1), the government must show only that the defendant "possessed" a dangerous weapon, and it can do so by establishing that a temporal and spatial relation existed between the weapon, the trafficking activity, and the defendant. Once the government makes out a prima facie showing that the defendant drug-dealer possessed a weapon, the burden of production shifts to the defendant to demonstrate that the

In analyzing this claim, the Court shall look at the clarity, gravity, and character, and impact of the alleged error. *Khattak*, 273 F.3d at 63. Starting at the end, with the impact, the Court finds that Petitioner was impacted by the two-level enhancement.[2] The Court now turns to the context of the alleged error. Petitioner is correct that the Government took no position at the sentencing hearing. Further, Petitioner's Plea Agreement made no mention of the two-level firearms enhancement and Petitioner consistently maintained throughout the proceedings that he had not had possession of a firearm. (Pet. Mot. at 416.) In addition, in the Government's Sentencing Memorandum, the Government took "no position on the applicability of his enhancement [*sic*]." (Dkt No. 257 at 11 n. 2.)

However, while the government chose not to take a position, the Presentence Investigation Report recommended the enhancement. LESLIE E. MAXWELL, PRESENTENCE INVESTIGATION REPORT ¶ 123 (October 22, 2010). Defendant objected to this recommendation. Leslie Maxwell, Senior U.S. Probation Officer, wrote in response to this objection that:

> [T]he firearm was reasonably foreseeable to the defendant due to his involvement in this conspiracy. Specifically, on June 13, 2007, agents conducting surveillance at the Bella Rosa bar observed William Caraballo and an unknown white male arguing in front of the location. Joseph Capparella, and several other males, exited the Bella Rosa bar. They

---

> connection between the weapon and the drug offense was clearly improbable. We emphasize that the ultimate burden of proving the applicability of the enhancement remains at all times with the government. But once the government has made a prima facie showing that the defendant possessed the weapon, the enhancement should be applied unless the defendant can demonstrate that the drug-weapon connection was clearly improbable. *U.S. v. Napolitan*, 762 F.3d 297, 309 (internal citations omitted).

[2] With the two-level enhancement, and all other applied enhancements and reductions, Defendant's total adjusted offence level was 36. (Sent. Trans. 45:22-23.) With Defendant's zero criminal history points, and a total adjusted offense level of 36, the United States Sentencing Guidelines, Chapter 5, Part A, give Defendant a criminal history category of 1. (Sent. Trans. 45:23-46:1.) At a total offense level of 36, and a criminal history category of 1, the advisory guidelines range for imprisonment is 188 to 235 months. (Sent. Trans. 46:2-4.)

Without the two-level enhancement, all other applications remaining equal, Defendant's total adjusted offense level would have been 34. With Defendant's zero criminal history points, and a total adjusted offense level of 34, the United States Sentencing Guidelines, Chapter 5, Part A, give Defendant a criminal history category of 1. U.S.S.G. § 5(A). At a total offense level of 34, and a criminal history category of 1, the advisory guidelines range for imprisonment is 151 to 188 months. U.S.S.G. § 5(A). The Court applied a sentence of 210 months imprisonment, among other requirements. (Sent. Trans. 50:1-3.) Thus, while this sentence was squarely in range with a total adjusted offense level of 34, it was above range for a total offense level of 34.

> stood in close proximity to where Mr. Caraballo and the other male were arguing. The agents who were conducting surveillance observed Joseph Capparella walking west into the 1000 block of Watkins Street. They observed him remove a silver semiautomatic hand gun from his back waistband area. The agents watched the defendant load the firearm by pulling the slide back before he placed the handgun in the front waistband area of his pants. Mr. Capparella proceeded to walk back to the scene of the argument. They observed Mr. Capparella reach for the firearm from his waistband; however, he never removed it. LESLIE E. MAXWELL, ADDENDUM TO THE PRESENTENCE INVESTIGATION REPORT ¶ 123 (November 16, 2010).

Petitioner was on notice as to the specific evidence at issue regarding the presence of a firearm in the conspiracy. A district court may consider evidence presented in a Presentence Investigation Report when considering whether to apply the Section 2D1.1(b)(1) enhancement. *U.S. v. Thornton*, 306 F.3d 1355, 1358 (citing *United States v. Baird*, 218 F.3d 221, 231 (3d Cir. 2000)).

In imposing the enhancement, the Court stated:

> The Court understands that the defendant objects to the imposition of a firearms enhancement. The Government takes no position on this objection.
>
> Application note 2 to the United States Sentencing Guidelines, section 2D1.1 specifies that this enhancement should be applied "if the weapon was present during the crime unless it is clearly improbable that the weapon was connected with the offense."
>
> This Court has previously found and again here finds that dangerous weapons were possessed and utilized throughout the life of the conspiracy that was participated in and directed by the defendant. It was not clearly improbable that those weapons were part of the actions constituting the factual predicate for the conspiracy for which the defendant has pleaded guilty. Rather, it is the opposite. The objection is therefore overruled, and pursuant to United States Sentencing Guidelines, Section 2D1.1(b)(1), the defendant's offense level is increased by two. (Sentencing Hearing Transcript, 44:2-44:20.)

Prior to imposing the sentence, the Court queried defense counsel, "Mr. McMonagle, is there anything further?" (Sentencing Hearing Transcript, 52:9.) Defense Counsel answered "no." (Sentencing Hearing Transcript, 52:10.)

The Court appropriately considered evidence in the presentence report, Petitioner was on notice of this evidence being considered by the Court, the Court offered Petitioner an opportunity to respond to this evidence, and Petitioner declined to respond. Nonetheless, Petitioner argues (1) the Government had the burden of proving the two-level enhancement, which the Government failed to do by asserting it took "no position" as to the enhancement, and (2) that Petitioner was not sufficiently afforded the opportunity to argue that this evidence was not drug-weapon connection was clearly improbable.

First, a District Court may *sua sponte* raise the applicability of a two-level adjustment – even where such adjustment was not referenced in the Presentence Investigation Report, which is not the case here – so long as the parties are given reasonable notice prior to sentencing that the Court is contemplating such a ruling. *U.S. v. Mackins*, 218 F.3d 263, 269-70 (3d Cir. 2000) (citing *Burns v. United States*, 501 U.S. 129, 138 (1991)). The suggested two-level adjustment appeared in the Presentence Investigation Report, Petitioner objected, and the Addendum to the Presentence Investigation Report provided sufficient detail to permit Defendant to further object at the Sentencing. Petitioner was clearly on notice.

Second, Petitioner was afforded the opportunity to counter the evidence presented by the Court prior to the enforcement of the sentence.

Thus, even if Petitioner could potentially have a meritorious argument on appeal – which the Court disputes – that, e.g., either (1) the notice afforded to Petitioner was insufficient under *Mackins* or (2) the Court did not appropriately apportion the burdens of proof under *Thornton*, it is readily apparent to the Court that such appeals do not survive Petitioner's waiver. These are debatable legal issues. Enforcement of the waiver as to these two claims would not amount to a miscarriage of justice. As the Third Circuit has explained:

> A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues – indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous. . . . While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded. *Khattak*, 273 F.3d at 562.

While a closer call than Petitioner's other two grounds for relief, even this ground simply does not raise circumstances amounting to a miscarriage of justice.

### c. Enforcement of the waiver as to Ground Three would not be a miscarriage of justice.

Petitioner argues that the Supreme Court case *Bond v. United States*, 131 S. Ct. 2355 (2011) provides Petitioner with a new right to challenge this Court's jurisdiction over his crimes. This claim is likewise barred by the Plea Agreement's waiver provision.

In *Bond*, the Supreme Court held that a criminal defendant has standing to challenge her conviction under a federal statue on grounds that the statute interferes with the powers reserved

11

to the States under the Tenth Amendment. The Supreme Court has already held that Congress has the power to regulate the market in illegal drugs under the powers of the Commerce Clause. *See Gonzalez v. Raich*, 545 U.S. 1, 22 (2005); *United States v. Orozco*, 98 F.3d 105, 107 (3d Cir. 1996). Petitioner has failed to allege an error that would constitute a miscarriage of justice under *Bond*.

                              BY THE COURT:

                              /s/ C. Darnell Jones, II

                              _____

                              C. Darnell Jones, II    J.